1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICKY L. WISECARVER,

11            Plaintiff,                    No. CIV S-05-01957 PAN (JFM)

12      vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15            Defendant.                    ORDER
     _____/
16

17            The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20   Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will deny Plaintiff's motion for summary judgment, deny the

22   Commissioner's cross-motion for summary judgment, and remand this matter for further

23   proceedings consistent with this order.

24   /////

25   /////

26   /////

                                                1

I. Factual and Procedural Background

In a decision dated February 17, 2004, the ALJ determined Plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  The ALJ found Plaintiff has severe impairments of degenerative disc disease due to old compression fractures from T11 to L2, hypertension, obesity, diabetes, and organic mental disorder, but that these impairments do not meet or medically equal a listed impairment; Plaintiff is not entirely credible; Plaintiff retains the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; Plaintiff can sit, stand and walk for six hours in an eight hour workday; Plaintiff is unable to climb

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

ladders, ropes, or scaffolds; Plaintiff can perform simple, repetitive, routine work; Plaintiff has no restrictions in activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, and pace, and has never had an episode of decompensation; Plaintiff has the residual functional capacity to perform substantially all of the full range of medium work; Plaintiff's capacity for medium work is substantially intact and has not been compromised by any nonexertional limitations; and Plaintiff is not disabled. Administrative Transcript ("AT") 24-25.

Plaintiff contends that the ALJ committed numerous errors. First, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's subjective complaints. Second, Plaintiff states that the ALJ improperly weighed the various opinions of the medical experts who provided opinions about Plaintiff's ability to work. Third, Plaintiff contends that the ALJ overlooked significant evidence in determining Plaintiff's residual functional capacity. Fourth, Plaintiff argues that the ALJ improperly ignored lay witness testimony. Finally, Plaintiff states that the ALJ's vocational finding was not supported by substantial evidence.

II.  Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler,

782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III.  Analysis

        a.  The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Subjective Complaints.

                The ALJ found Plaintiff "not entirely credible."  AT 22.  This finding was not in error.  The ALJ provided clear and convincing reasons based upon substantial evidence in the record to support his assessment of Plaintiff's credibility.

                The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1985) (holding that questions of credibility and resolutions of conflicts in testimony are functions solely of the ALJ).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

                In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

4

1    the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

2    medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

3    (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

4    testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

5    prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

6    1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

7    55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

8    and effect of symptoms, and inconsistencies between testimony and conduct also may be

9    relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

10   to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

11   the ALJ in determining whether the alleged associated pain is not a significant nonexertional

12   impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

13   may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

14   1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

15   F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

16   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

17   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

18          Plaintiff argues that the ALJ failed to recognize the objective signs of Plaintiff's

19   impairment and improperly concluded that a lack of objective medical support equated to a lack

20   of credibility.  (Pl.'s Mot. Summ. J. 15:1-4.)  This statement is without merit and misinterprets

21   the ALJ's findings.  The ALJ recognized the objective basis for Plaintiff's impairments, noting

22   that "[Plaintiff's] impairments could reasonably be expected to produce some of the pain

23   alleged."  AT 22.  Where the ALJ discounted Plaintiff's complaints was not in the existence of

24   Plaintiff's injuries, but rather, the extent of the limitations caused by those injuries.

25          Even with some evidence of malingering, including multiple medical opinions

26   that Plaintiff demonstrated poor effort during medical examinations, AT 469, 494, the ALJ

1    provided clear and convincing reasons for giving less weight to Plaintiff's subjective complaints.

2    The ALJ described the daily activities of the Plaintiff that were inconsistent with his subjective

3    complaints of pain.  AT 22.  The ALJ noted that Plaintiff negotiates outside steps at his house on

4    multiple occasions throughout the day, and performs household chores like washing the dishes,

5    laundry, and shopping.  Id.  Furthermore, the ALJ found that Plaintiff was able to care for his

6    young son, take him to soccer practice and attend school meetings with his son's teacher.  Id.

7    Plaintiff stated that he was able to take care of all of his personal needs.  AT 309.

8            These abilities were confirmed by others.  Plaintiff's mother noted that he was

9    able to do all of his own personal shopping and go to the grocery store once a week.  AT 324.

10   Third-party witnesses observed that Plaintiff got his son ready for school every day, and drove

11   him to class.  AT 326.  Even with Plaintiff's relative mobility, doctors encouraged even greater

12   activity, recommending that Plaintiff do more than his daily 15 minutes of exercise on the

13   treadmill.  AT 20.

14           The mere fact that Plaintiff is able to engage in some daily activities does not, in

15   and of itself, compromise his subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d

16   587, 594 (9th Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen,

17   885 F.2d 597, 603 (9th Cir.1989) (holding that one need not be "utterly incapacitated" in order to

18   be disabled).  However, the ALJ found that Plaintiff spent a substantial part of his day

19   performing activities consistent with those necessary for productive work.  See Morgan, 169 F.3d

20   at 600 (finding plaintiff's ability to fix meals, do laundry and yard work, and occasionally care

21   for a friend's child sufficient to undermine complaints of pain).  The evidence of Plaintiff's daily

22   activities is a clear and convincing reason to give less weight to Plaintiff's credibility.

23           In addition to Plaintiff's daily personal activities, the ALJ noted several work

24   activities Plaintiff performed that were inconsistent with any subjective complaints of disability.

25   Plaintiff had been able to receive a commercial trucking license in spite of his complaints of

26   illiteracy.  Id.  Furthermore, Plaintiff was also able to work as a care giver for his grandfather.  Id.

1   Plaintiff's stated reason for ending this employment was not physical or mental disability, but

2   rather, that his grandfather was placed in a nursing home.  AT 83.

3           Finally, the ALJ found that Plaintiff spent a year on unemployment insurance,

4   performing no job searches during that time.  AT 22-23.  A recipient of unemployment benefits

5   implicitly acknowledges an ability to work.  See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir.

6   1988).  Along with the other evidence in the record, Plaintiff's acceptance of these benefits,

7   regardless of whether or not Plaintiff was unemployed for medical reasons, supports the ALJ's

8   credibility determination.  Id.

9           The record casts some doubt on many of Plaintiff's complaints of disability.

10  Plaintiff noted in one of his daily activities questionnaires numerous physical and mental

11  problems, including severe back pain, frequent urination, headaches, and difficulty concentrating.

12  AT 329.  However, Plaintiff complained that he was unable to work because he could not get

13  medical clearance to drive a truck solely because of his need to frequently urinate.  AT 333.

14  Plaintiff made no direct complaint of any physical or mental impairment that precluded him from

15  performing his past relevant work as a truck driver.  Only in a second questionnaire does Plaintiff

16  cite his other physical impairments as a reason for disability.  AT 339.  Inconsistencies such as

17  these are one of the ordinary techniques of credibility evaluation that can be a clear and

18  convincing reason to discredit Plaintiff's complaints.  See Tonapetyan v. Halter, 242 F.3d 1144,

19  1148 (9th Cir. 2001); see Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

20          Furthermore, Plaintiff refused diagnostic tests designed to determine the source of

21  his pain or to follow his doctors' advice.  AT 397, 428, 495.  A plaintiff is not obligated to

22  endorse every recommendation of his physicians.  However, the refusal to undergo tests or

23  treatment designed to address symptoms and sources of pain can cast doubt upon Plaintiff's

24  credibility.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(holding that the failure to

25  seek treatment for four months was "powerful evidence" undermining a plaintiff's subjective

26  complaints of pain).

1      The factors considered by the ALJ were all valid and supported by the record.

2   The ALJ properly noted that Plaintiff's daily activities undermined his complaints of disabling

3   pain.  Furthermore, Plaintiff's past work history, receipt of unemployment benefits following his

4   release from previous employment, and refusal to follow the advice of his physicians casts

5   further doubt on Plaintiff's subjective complaints.  The ALJ's credibility determination was

6   based on permissible grounds and will not be disturbed.

7          b.  The ALJ Properly Weighed the Medical Evidence in the Record.

8      The ALJ evaluated multiple medical opinions regarding the nature and limitations

9   of Plaintiff's physical and mental impairments.  In reaching his conclusions about Plaintiff's

10   physical impairments, the ALJ gave greater weight to the opinions of the State Agency

11   physicians over those of the treating or examining physicians.  AT 21.  As it concerned Plaintiff's

12   mental impairment, the ALJ gave significant weight to the State Agency opinion.  Id.  These

13   findings were not in error.

14      The weight given to medical opinions depends in part on whether they are

15   proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

16   830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

17   who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v.

18   Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

19      To evaluate whether an ALJ properly rejected a medical opinion, in addition to

20   considering its source, the court considers whether (1) contradictory opinions are in the record;

21   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

22   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

23   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

24   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester,

25   81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if

26   it is contradicted by a supported examining professional's opinion (e.g., supported by different

1  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

2  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

3  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

4  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

5  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

6  non-examining professional, without other evidence, is insufficient to reject the opinion of a

7  treating or examining professional.  Lester, 81 F.3d at 831.

8          The ALJ found Plaintiff to suffer from the severe physical impairments of

9  degenerative disc disease, hypertension, obesity, and diabetes.  AT 19.  The resulting residual

10 functional capacity assessment concluded that Plaintiff was able to perform a wide range of

11 medium work, lifting up to 50 pounds occasionally and 25 pounds frequently, with up to six

12 hours of sitting, standing, and walking in an eight hour day, precluded only from climbing

13 ladders, ropes and scaffolds.  AT 22.  As a result of his nonexertional limitations, the ALJ also

14 stated that Plaintiff could only perform simple, routine, and repetitive work.  Id.  The ALJ

15 evaluated multiple medical opinions prior to reaching this conclusion.

16         Plaintiff was treated by Dr. Ojingwa.[2]  On October 20, 2003, Dr. Ojingwa stated

17 that Plaintiff was capable of only occasional lifting and carrying of up to 10 pounds.  AT 496,

18 497.  In addition, Dr. Ojingwa stated that Plaintiff could only sit for two hours in an eight hour

19 day, stand for one hour in an eight hour day, and walk for two hours in an eight hour day, and

20 that none of these activities could be done for more than 30 minutes at a time.  AT 497.

21 According to Dr. Ojingwa, Plaintiff was able to perform frequent manipulation, reaching, and

22 handling, but should never climb, balance, stoop, or crouch, and should only occasionally kneel

23 /////

24

25         [2]Plaintiff refers to his treating physician as Dr. Ojin*a*wa,  The court has taken Plaintiff's
   reference to Dr. Ojinawa to mean Dr. Ojin*g*wa.  Dr. Ojingwa prints his name using a "g," AT
26 524, and computer records from his employer spell his name with a "g," AT 526.

1  or crawl.  AT 497, 498.  Dr. Ojingwa also opined that Plaintiff should avoid a number of

2  environmental hazards, such as heights and moving machinery.  AT 499.

3         The ALJ gave little weight to Dr. Ojingwa's opinion because of the relatively

4  short treatment relationship and infrequent contact between the doctor and Plaintiff.  AT 21.

5  This conclusion was not in error.  According to Dr. Ojingwa's notes, he had seen Plaintiff only

6  three times prior to forming his conclusions about her residual functional capacity.  AT 495.

7  The basis for giving preferential weight to the treating physician's opinion is that the treating

8  physician has a greater opportunity to know and observe the patient.  See Smolen, 80 F.3d 1285.

9  In this case, the treating physician's relationship was not significantly greater than the

10  relationship between Plaintiff and the examining physicians.  When the opinion is brief and

11  conclusory, the mere title of treating physician does not automatically require preferential

12  weighing.  See Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (upholding rejection of

13  treating physician who had seen Plaintiff once).

14         Regardless of the relationship between Plaintiff and Dr. Ojingwa, the ALJ

15  provided additional specific and legitimate reasons for the weight he assigned.  The ALJ noted

16  that objective evidence in the record does not support Dr. Ojingwa's conclusions.  AT 21.  The

17  record contains none of Dr. Ojingwa's notes from his previous examinations that would support

18  his conclusions.  Furthermore, none of the test results, x-rays, or MRIs reveal any level of

19  impairment consistent with Dr. Ojingwa's opinions.  Plaintiff refused EMG studies.  AT 428.

20  Plaintiff's back trouble was described as mild degenerative disc disease with no evidence of

21  herniation or stenosis.  AT 542, 543.  There is little support in the record for the extensive

22  limitations imposed by Dr. Ojingwa.

23         Furthermore, Dr. Ojingwa's treatment is not consistent with his functional

24  assessment.  Dr. Ojingwa treated Plaintiff primarily with diet and exercise, a protocol somewhat

25  inconsistent with his conclusion that Plaintiff could do very little physical activity.  AT 495, 524-

26  25, 527.  Dr. Ojingwa did not change any of Plaintiff's prescription medications.  Id.  This

relatively conservative treatment in light of the other medical opinions in the record further undermines Dr. Ojingwa's opinion that Plaintiff can perform few of the tasks necessary for renumerative work.[3]

Multiple opinions in the record contradict Dr. Ojingwa's functional assessment. Dr. O'Brien conducted a physical examination of Plaintiff on March 20, 2003.  AT 485-90. After completing her examination, Dr. O'Brien diagnosed Plaintiff with lower back pain without evidence of radiculopathy[4], diabetes mellitus type II with no reported complications and no evidence of decreased sensation, and left lateral chest and left anterior thigh numbness of unclear origin.  AT 489-90.  Dr. O'Brien opined that Plaintiff was capable of lifting 100 pounds occasionally and 50 pounds frequently.  AT 490.  Dr. O'Brien also found that Plaintiff was able to sit, stand, and walk for up to six hours in an eight hour workday, and that he should only stoop and crouch rarely, and kneel, climb, reach, handle, feel, grasp, and finger frequently.  Id.

The State Agency reviewed Plaintiff's medical history on April 8, 2003.  AT 455-62.  At this time, State Agency doctors found Plaintiff able to lift 50 pounds occasionally and 25 pounds frequently; sit, stand, and walk for six hours in an eight hour workday; and perform unlimited pushing and pulling activities with his extremities.  AT 456.  The State Agency opined

---

[3]The ALJ believed that Plaintiff's visit to Dr. Ojingwa on November 20, 2003, was solely to receive his functional assessment.  The facts do not support this conclusion.  A benefits counselor at San Joaquin Hospital forwarded to Dr. Ojingwa a functional assessment form on September 29, 2003.  AT 524.  Plaintiff had seen Dr. Ojingwa twice prior to this date and saw him once afterward.  There is no evidence in the record to support the ALJ's conclusion that Plaintiff saw Dr. Ojingwa on November 20, 2003, solely to have this form completed.  Indeed, it appears as if Dr. Ojingwa completed the form at his leisure and returned it to the benefits counselor as requested by her.  Furthermore, the purpose for which a medical opinion is solicited does not provide a legitimate basis to reject that opinion.  Lester, 81 F. 3d at 832.  Regardless, remand is not warranted as a result of this statement because the ALJ did not rely on this reason to discredit Dr. Ojingwa's opinion, noting instead the lack of objective findings and the short treatment history.  AT 21.

[4]Radiculopathy is a clinical situation where the radicular nerve (nerve root) is compressed by a displaced disc.  The problem tends to occur most frequently in the cervical and lumbar spine.  See http://www.medhelp.org/HealthTopics/Radiculopathy.html.

1  that Plaintiff was capable of frequent postural activities in all areas, including climbing,

2  balancing, or stooping.  AT 457.  The State Agency also noted that Plaintiff's near visual acuity

3  was limited.  AT 458.  It was the State Agency doctor's opinion that the objective medical

4  evidence did not support the nature and extent of Plaintiff's subjective complaints.  AT 460.

5           Subsequent opinions from State Agency doctors both confirmed this assessment

6  of Plaintiff's exertional limitations, in addition to reducing the frequency of Plaintiff's postural

7  limitations.  AT 466.  A reevaluation of Plaintiff's medical record by the State Agency occurred

8  on July 9, 2003.  AT 443-50.  In this assessment, nonexamining doctors with the State Agency

9  confirmed the initial exertional findings from April, repeating that Plaintiff was able to lift 50

10  pounds occasionally and 25 pounds frequently; sit, stand, and walk for six hours in an eight hour

11  workday; and perform unlimited pushing and pulling activities with his extremities.  AT 444.

12  Doctors also confirmed that Plaintiff  had limited near acuity.  AT 446.  However, in contrast

13  with the original assessment, the State Agency reduced all of Plaintiff's postural activities such

14  as climbing, stooping, balancing, and bending from frequent to occasional.  AT 445.

15           The ALJ gave greater weight to the two opinions of the State Agency doctors than

16  to Dr. O'Brien.  AT 21.  According to the ALJ, the State Agency opinions were more consistent

17  with the objective medical evidence in the record.  Id.  As noted above, there is minimal

18  objective evidence of disability that supports a functional assessment more restrictive than that

19  offered by the nonexamining doctor with the State Agency.  AT 428, 542, 543. The ALJ's

20  finding was not in error.  The opinion of a nonexamining physician may serve as substantial

21  evidence when that opinion is supported by objective evidence in the record.  Thomas v.

22  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

23           However, as explained more fully below, the ALJ's failure to include some of the

24  relevant functional limitations from the State Agency assessments in his finding of Plaintiff's

25  residual functional capacity, or to adequately explain his divergence therefrom, requires remand.

26  Such specific reasoning is particularly required in this case given the fact that the ALJ gave the

12

same weight to two State Agency opinions that reach different conclusions about Plaintiff's

postural abilities.  Given the nature of the State Agency findings, remand is required in order to

permit the ALJ to explain his findings with greater specificity.

In addition to Plaintiff's physical ailments, the ALJ also found that Plaintiff

suffered a severe organic mental impairment.  AT 19.  Plaintiff underwent a mental status

examination by Dr. Wakefield on March 8, 2003.  AT 491-94.  Dr. Wakefield found Plaintiff's

intellectual ability to be mildly mentally retarded, with similar verbal and nonverbal ability

levels, as well as deficient concentration and memory.  AT 493.  Dr. Wakefield opined that

Plaintiff can follow simple work rules, and can interact with coworkers and the public at

minimally acceptable levels.  AT 494.  In addition, Dr. Wakefield stated that Plaintiff's ability to

make occupational, social, and personal decisions in his best interest was somewhat immature,

and that his concentration, persistence, and pace were deficient.  Id.  Dr. Wakefield did note that

his objective test results suggested a possibility of reduced effort by Plaintiff during the

examination.  Id.

The State Agency assessed Plaintiff's mental residual functional capacity on

March 18, 2003.[5]  AT 467-70.  Reviewing doctors found Plaintiff not significantly limited in

most functional categories.  Moderate limitations were noted in Plaintiff's ability to understand

and remember, carry out detailed instructions, and ask simple questions or request assistance.

AT 467-68.  The result was that Plaintiff was found to be mildly limited in his activities of daily

living and ability to maintain social functioning, and moderately limited in his ability to maintain

concentration, persistence, and pace.  AT 481.  The doctor also expressed concerns about

Plaintiff's credibility as the objective evidence in the record failed to support the full extent of

Plaintiff's symptoms.  AT 469.

/////

---

[5]Plaintiff incorrectly refers to this assessment as having taken place on July 18, 2003.
(Pl.'s Mot. Summ. J. 18:9.)

1    In her summation of the medical evidence, the nonexamining doctor limited

2  Plaintiff to unskilled work activities as a result of his cognitive deficits.  Id.  Unskilled work

3  needs little or no judgment to perform simple duties and can generally be learned on the job in 30

4  days or less.  20 C.F.R. § 416.968(a), nor does it require working with people.  20 C.F.R. Pt. 404,

5  Subpt. P, App. 2, Rules 201.00(I), 202.00(g); SSR 85-15.  The State Agency found no substantial

6  impairment in Plaintiff's ability to understand and carry out simple instructions, or respond

7  appropriately to the public or coworkers.  AT 467.  This limitation incorporates all of the relevant

8  findings of the State Agency.

9    The ALJ gave significant weight to the opinion of the State Agency mental health

10  professionals.  AT 22.  The ALJ correctly noted that there were no contrary findings in the record

11  regarding Plaintiff's ability to perform simple, unskilled work.  AT 21.  Indeed, this limitation to

12  simple, unskilled work as opposed to more complex tasks complements the findings of Dr.

13  Wakefield.  The ALJ made no explicit finding as it concerned Dr. Wakefield's opinion; however,

14  there is no indication that it was rejected.  The ALJ noted that, despite Plaintiff's possible poor

15  effort, he accepted Dr. Wakefield's conclusion that Plaintiff was able to perform simple, routine

16  tasks.  Id.

17    The ALJ's weighing of the medical evidence was not in error.  The ALJ gave

18  specific and legitimate reasons for discrediting Plaintiff's treating physician.  Furthermore, the

19  ALJ's weighing on the opinions of the mental health professionals was proper and supported by

20  substantial evidence in the record.  The ALJ's findings will not be disturbed.

21    c.  The ALJ's Determination of Plaintiff Residual Functional Capacity Was Not

22  Supported by Substantial Evidence in the Record.

23    The ALJ found Plaintiff capable of performing medium work with some

24  additional nonexertional limitations.  This finding was in error.  The medical opinions relied

25  upon by the ALJ do not support his ultimate conclusion about Plaintiff's abilities.  Remand is

26  /////

1   required in order to permit the ALJ to properly assess Plaintiff's abilities in light of the medical

2   and other evidence in the record.

3          Social Security Ruling 96-8p sets forth the policy interpretation of the

4   Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional

5   capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R.

6   §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir.

7   1985) (residual functional capacity reflects current "physical and mental capabilities").

8          The ALJ stated that he placed great weight in the medical opinions of the

9   nonexamining physicians with the State Agency.  In reaching this finding, the ALJ provided

10  specific and legitimate reasons for discrediting the medical opinions of Plaintiff's treating and

11  examining physicians.  However, based upon the ALJ's evaluation of the medical opinions, it is

12  not apparent that substantial evidence supports his conclusions about Plaintiff's residual

13  functional capacity.

14         The ALJ found Plaintiff capable of lifting and carrying 50 pounds occasionally

15  and 25 pounds frequently, in addition to being able to sit, stand, and walk for six hours in an

16  eight hour workday.  This finding is consistent with the medical evidence to which the ALJ gave

17  great weight.  However, the ALJ improperly excluded the nonexertional limitations recognized

18  by the State Agency physicians that were caused by Plaintiff's severe impairments.

19         Both nonexamining physicians with the State Agency found Plaintiff limited in

20  his postural activities as well as near acuity.  The opinion from April 8, 2003, noted that Plaintiff

21  was frequently impaired in his ability to climb, balance, stoop, kneel, crouch, or crawl.  AT 457.

22  The evaluation from July 9, 2003, reduced those postural limitations to occasional.  AT 445.

23  Both opinions stated that Plaintiff was limited in his near acuity.  AT 446, 458.

24         Despite his reliance on the medical opinions of the State Agency, the ALJ found

25  that Plaintiff was precluded only from climbing ladders, ropes, and scaffolds.  This preclusion

26  was complete, as opposed to occasional or frequent.  The ALJ is certainly able to find greater

15

1  limitations than those recognized by the medical experts.  However, unlike the State Agency

2  doctors upon which he relied, the ALJ gave no apparent consideration to Plaintiff's ability to

3  balance, stoop, kneel, crouch, or crawl, nor did he conclude that Plaintiff was limited in his

4  visual acuity.  See 416.945(a)(3)("We will consider any statements about what you can still do

5  that have been provided by medical sources.")  Furthermore, the ALJ provided no reasoning in

6  his opinion for diverging from this aspect of the State Agency opinions upon which he gave

7  "substantially more weight."  AT 21.  As a result, remand is required.

8          The other medical opinions in the record, to which the ALJ gave lesser credit,

9  confirm that Plaintiff has some level of broad postural impairment.  Dr. O'Brien noted that

10  Plaintiff should only occasionally stoop and crouch, and frequently kneel and climb.  AT 490.

11  Dr. Ojingwa permitted only occasional kneeling and crawling.  AT 498.  None of the medical

12  opinions support the ALJ's finding about Plaintiff's postural or visual limitations.

13          Furthermore, there is nothing inherent about a limitation to medium exertion

14  work, or simple, routine, repetitive tasks that precludes the postural and visual limitations

15  consistently present in the medical evidence.  Medium work is a description of the exertion

16  required to perform a job; specifically, the ability to lift 50 pounds occasionally and 25 pounds

17  frequently.  20 C.F.R. § 416.967(c).  Unskilled work needs little or no judgment to perform

18  simple duties and can generally be learned on the job in 30 days or less.  20 C.F.R. §

19  404.1568(a).  Neither of these categories of work contain any implicit postural or visual

20  accommodations for someone unable to balance, stoop, or kneel, or who had limited near acuity.

21          While the ALJ erred by failing to incorporate some of the medical findings into

22  his residual functional capacity, or to adequately explain their rejection, there was no error in the

23  ALJ's refusal to incorporate any limitations caused by side effects from Plaintiff's medications.

24  The law requires an analysis of the side effects caused by medication.  At the second stage of the

25  sequential analysis, the ALJ should consider numerous factors, including the side effects of

26  Plaintiff's medications.  20 C.F.R. § 415.929(c); see Webb v. Barnhart, 433 F.3d 683, 688 (9th

1  Cir. 2005)(holding that side effects were one aspect of substantial evidence of severe impairment

2  at stage two of the sequential analysis).  Furthermore, in determining Plaintiff's residual

3  functional capacity, side effects should be considered if there is relevant evidence in the record to

4  support a conclusion that they have an impact on Plaintiff's ability to work.  SSR 96-8p.

5          The ALJ did not commit any error by failing to expressly acknowledge that

6  Plaintiff suffered from numerous side effects as a result of his medications.  Plaintiff offers no

7  objective evidence to support his contention that the side effects from his medication rendered

8  his functional capacity below that found by the ALJ.  There is nothing in the medical record to

9  suggest Plaintiff suffered any disabling impairment as a result of his medications.  The record

10  contains no evidence that Plaintiff complained to his treating doctors about his medications or

11  their side effects.  Furthermore, it is not apparent that his treating or prescribing physicians felt

12  any need to adjust medications or dosages as a result of harmful side effects.

13          Plaintiff's sole support for his proposition that the side effects from his

14  medications leave him with a lesser capacity than that found by the ALJ is his subjective

15  complaints.  As described in detail above, the ALJ properly discounted Plaintiff's subjective

16  complaints.  Without credible, relevant evidence documenting some impact from Plaintiff's

17  medications, it cannot be said that the ALJ improperly excluded this evidence from his residual

18  functional capacity assessment.  See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

19          The ALJ also properly excluded Plaintiff's complaints of problems with urination

20  from the residual functional capacity assessment.  Plaintiff originally complained of frequent

21  urination in his prior application for benefits.  AT 85.  This complaint was repeated in Plaintiff's

22  newest application.  AT 329, 339.  In his most specific evaluation of the ailment, Plaintiff

23  complained of a prostate problem that created his need to urinate frequently.  AT 367.

24          The record does contain some objective evidence to support Plaintiff's complaints

25  of urological problems.  Plaintiff's list of medications shows that he took Oxybutynin, a

26  medication designed to relax bladder spasms and treat his urination problems.  AT 364, 386.  In

17

spite of this, treatment notes from San Joaquin Hospital show that Plaintiff seldom complained about his urination.  AT 387.  Plaintiff made no apparent complaints to Dr. Ojingwa about any urinary issues.  AT 524-25, 527.  On several occasions, Plaintiff reported pain and other problems during ejaculation.  AT 384, 386, 397.  However, subsequent tests to confirm any diagnosis of epididymitis[6], penile hypoesthesia[7], or other disabling condition that might explain the source of Plaintiff's urination problems were negative or refused by Plaintiff.  Id.  Physicians who treated Plaintiff for his complaints failed to discover any etiology.  AT 551, 560, 562, 572.

Plaintiff's subjective complaints of frequent urination, upon which Plaintiff's prescription for Oxybutynin was given, are the sole evidence in the record to support any finding of disability.  As noted above, the ALJ properly found Plaintiff to be less than fully credible.  The ALJ's failure to discuss in his findings the evidence relating to Plaintiff's urination problems does not mean that it was not considered.  The ALJ is under no obligation to discount theories of disability wholly unsupported by the facts.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  It is Plaintiff's burden to present objective evidence of disability at step two of the sequential analysis.  With regards to Plaintiff's complaints of disabling side effects or frequent, painful urination, Plaintiff failed in that task.

Similarly, Plaintiff's complaints that the ALJ ignored his obesity in determining the residual functional capacity are without merit.  The ALJ found Plaintiff's obesity to be a severe impairment.  AT 24.  Plaintiff offers no evidence to support his conclusion that this severe impairment was not considered by the ALJ.

/////

---

[6]Epididymitis is inflammation at the small coiled tube (epididymis) at the back of the testicle.  http://www.mayoclinic.com/health/epididymitis/DS00603.

[7]Hypoesthesia is partial loss of sensitivity to sensory stimuli or diminished sensation.  http://medical-dictionary.thefreedictionary.com/hypoesthesia.

1     The ALJ placed great weight upon the opinions of the State Agency doctors, in

2 addition to putting lesser weight in the opinion of Dr. O'Brien.  AT 21.  The medical records

3 relied upon by the State Agency include prominent references to Plaintiff's weight, describing

4 Plaintiff as "rotund," AT 466, and reporting his weight as "323 pounds," AT 453.  Dr. O'Brien

5 described Plaintiff as a "well-nourished, well-developed man with centripetal obesity."  AT 487.

6 Even Dr. Ojingwa noted Plaintiff's weight and based his treatment primarily on diet and

7 exercise.  AT 495, 524-25, 527.  The remaining medical records document in detail Plaintiff's

8 obesity.  Any contention that obesity was not considered in the ALJ's functional capacity

9 assessment is without merit as it ignores the evidence upon which the ALJ explicitly relied.

10     While the ALJ's conclusions about Plaintiff's physical abilities were in error, the

11 ALJ's findings as they concerned the limitations caused by Plaintiff's mental impairment were

12 supported by substantial evidence in the record.  The State Agency found Plaintiff limited to

13 unskilled work.  AT 469.  Unskilled work requires an ability to deal with changes in the routine

14 work setting.  SSR 85-15.  In this particular aspect, the State Agency concluded that Plaintiff was

15 moderately limited, yet opined that Plaintiff could still perform unskilled work.  AT 468, 469.

16 The ALJ's finding was not in error.

17     A preclusion from unskilled work only occurs when there is a substantial loss of

18 Plaintiff's ability to respond to changes in the work setting.  SSR 85-15.  Given the expert

19 opinion from the State Agency doctor, as well as the other evidence in the record documenting

20 Plaintiff's ability to perform unskilled work, including the medical opinions, evidence of

21 Plaintiff's daily activities, and his prior work history, the ALJ's determination that a moderate

22 impairment did not equal a substantial loss in ability was not in error.  Substantial evidence

23 supports the ALJ's conclusion that Plaintiff's can perform all the essential components of

24 unskilled work.

25     Remand is necessary in order to permit the ALJ to reevaluate the evidence of

26 Plaintiff's physical impairments.  The ALJ's findings as they concern Plaintiff's residual

1    functional capacity must be supported by substantial evidence in the record and consistent with

2    his findings regarding the medical evidence.  While the ALJ properly weighed the medical

3    evidence in his findings, reexamination of the weight he gave those opinions may be warranted

4    should it be necessary to create logical consistency with the updated residual functional capacity

5    assessment.  Upon reaching his findings, the ALJ should continue the sequential analysis as

6    appropriate.

7            d.   Remand Is Required in Order to Permit the ALJ to Properly Evaluate the Lay Witness

8    Testimony.

9            The ALJ offered no assessment in his findings of the evidence provided by the

10   third-party witnesses in this case.  This omission is an error that requires remand.  Upon remand,

11   the ALJ is directed to specifically "consider the observations by non-medical sources as to how

12   [Plaintiff's impairment affects his] ability to work."  20 C.F.R. § 416.913(e)(2).

13           "[L]ay witness testimony as to a claimant's symptoms or how an impairment

14   affects ability to work is competent evidence, and therefore cannot be disregarded without

15   comment."  Nguyen, 100 F.3d at 1467; see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.

16   1993) (friends and family members in a position to observe a plaintiff's symptoms and daily

17   activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of

18   the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

19   919.   The ALJ provided no reasons for ignoring the statements provided by the third-party

20   witnesses in this case.

21           Plaintiff's mother, Ms. Wisecarver, completed a third-party questionnaire

22   describing Plaintiff's impairments on February 23, 2003.  AT 323-28.  Ms. Wisecarver noted that

23   Plaintiff spent most of his time sitting and watching TV or listening to music.  AT 323, 325.

24   According to Plaintiff's mother, because of his problems, Plaintiff was not able to sleep well or

25   consistently.  AT 323, 324.

26   /////

1    Plaintiff's mother also described the mental impairments that affected her son's

2  behavior.  Plaintiff had difficulty remembering, requiring others to put notes throughout the

3  kitchen in order to remind him.  AT 327.  Ms. Wisecarver observed that Plaintiff had difficulty

4  following instructions, and was hesitant to leave the house for long periods of time.  AT 327.

5  According to Ms. Wisecarver, her son was a "different person" than he was prior to the onset of

6  his pain.  AT 328.

7    Plaintiff's girlfriend, Ms. Faught, also completed a third-party questionnaire on

8  June 23, 2003.  AT 341-349.  Ms. Faught described many of the same complaints as Plaintiff's

9  mother, noting that Plaintiff had difficulty sleeping and getting in and out of the shower.  AT

10 342.  Plaintiff's girlfriend also described some of the mental impairments suffered by Plaintiff,

11 noting that he must be reminded to take his medication.  AT 343.

12   Field office observations confirmed some of the complaints made by Ms.

13 Wisecarver and Ms. Faught.  Plaintiff was observed by his interviewer on January 28, 2003, and

14 appeared to have difficulty breathing, sitting, and concentrating.  AT 352.  Plaintiff also

15 complained to his interviewer of his poor reading skills.  Id.

16   The ALJ made no findings about the evidence provided by these witnesses.  This

17 failure is error that requires remand.  See Stout v. Commissioner, Social Sec. Admin., 454 F.3d

18 1050 (9th Cir. 2006).  On remand, the ALJ is directed to address the third-party statements and

19 weigh them accordingly.  If necessary following proper evaluation of the lay witness testimony,

20 this evidence should be considered in the ALJ's reassessment of Plaintiff's residual functional

21 capacity.

22   e.  The ALJ's Vocational Finding Was Not Supported by Substantial Evidence in the

23 Record.

24   The ALJ found Plaintiff capable of performing simple, repetitive, routine,

25 medium work with a preclusion from climbing.  AT 24.  Upon consultation with the Medical

26 Vocational guidelines, the ALJ determined that Plaintiff was not disabled.  AT 23-24.  Given the

21

1    need to remand for reconsideration of the residual functional capacity and lay witness testimony

2    in this case, this finding was in error.

3              The Medical-Vocational Guidelines ("the grids") are in table form.  The tables

4    present various combinations of factors the ALJ must consider in determining whether other

5    work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The

6    factors include residual functional capacity, age, education, and work experience.  For each

7    combination, the grids direct a finding of either "disabled" or "not disabled."

8              There are limits on using the grids, an administrative tool to resolve individual

9    claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

10   testimony of a vocational expert only when the grids accurately and completely describe the

11   claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

12   also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

13   may rely on the grids, however, even when a claimant has combined exertional and nonexertional

14   limitations, if nonexertional limitations are not so significant as to impact the claimant's

15   exertional capabilities.[8] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

16   other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

17   F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

18   (requiring significant limitation on exertional capabilities in order to depart from the grids).

19             The ALJ failed to accurately assess Plaintiff's residual functional capacity

20   according to the evidence in the record.  Furthermore, the ALJ erred in his failure to evaluate the

21   _____

22        [8]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
     lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary;
     compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9thCir.1989).

23        Non-exertional activities include mental, sensory, postural, manipulative and
     environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §

24   416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.
     404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

25   to work without directly affecting his or her strength, the claimant is said to have nonexertional
     (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d

26   953, 958 (9thCir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

testimony from third-party witnesses.  Any analysis of the ALJ's reliance on the grids or failure to employ a vocational expert is premature given the need to remand this case for reconsideration of the medical evidence.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment is denied;

2.  The Commissioner's cross motion for summary judgment is denied; and

3.  This matter is remanded for further proceedings consistent with this order.

DATED:  November 16, 2006.


UNITED STATES MAGISTRATE JUDGE

13
Wisecarver.1957.ss.wpd

23